## James H. Hackett, Administrator of the Estate of Francis W. Baker, Deceased, v. Henry C. Pratt and Robert A. Kuechler, Partners as The Pratt-Kuechler Drug Co.

1. DAMAGES—*Inadequate.*—At common law new trials were not allowed upon the ground that the damages allowed by the jury in actions for torts were insufficient; at least such was the rule in trespass *vi et armis,* and there is much authority that the rule applied in all actions for torts.

2. NEW TRIALS—*Inadequate Damages.*—As a general rule a new trial will not be granted on the ground that the damages are too small in actions for wrongs and injuries, but we think an exception may be drawn from the more modern judicial holdings.

3. NEW TRIALS—*Grossly Inadequate Damages—A More Modern Rule.*—Where a verdict gives grossly inadequate damages to the plaintiff, a new trial may be granted the plaintiff upon the same principle that like relief is granted to a defendant, when excessive damages are assessed by the jury.

4. MEASURE OF DAMAGES—*Unliquidated Damages.*—Where there is no legal measure and the damages are unliquidated the estimation of damages is peculiarly within the province of the jury; so also as to the assessment of vindictive or exemplary damages; but where actual damages

are shown with such definiteness as to furnish a reasonably certain measure, the court may look into the circumstances proven and grant a new trial, if the amount awarded by the verdict is manifestly inadequate.

5. DRUGGISTS—*Statute Concerning the Sale of Poisons.*—Section 103 of the Criminal Code, which provides for the punishment of any druggist who shall sell and deliver corrosive sublimate or other poisonous substances or liquids, without having the word "poison" printed upon a label attached to the vial in which the poison is contained, does not apply to cases where a druggist is induced to deliver a poisonous liquid to a person by the representations of such person that it was his, and without knowing the character of the same.

Memorandum.—Action to recover damages resulting from death by negligent acts. Appeal from the Circuit Court of Morgan County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed October 28, 1893.

The opinion states the case.

OWEN P. THOMPSON and JOHN A. BELLATTI, attorneys for appellant.

I. L. MORRISON and EDWARD P. KIRBY, attorneys for appellee Henry C. Pratt.

J. P. LIPPINCOTT, attorney for appellee Robert Kuechler.

MR. PRESIDING JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

This was a case brought by the appellant's administrator for the benefit of two daughters and a nephew, next of kin of the intestate, to recover damages from the appellees, who were druggists, for, as it is alleged, negligently causing the death of Francis W. Baker, appellant's intestate.

The case has been twice tried, each hearing before a jury, the verdict in the first instance being for the appellees, and upon the last hearing the appellees were found guilty by the jury, and the damage of the appellants assessed at one dollar. The appellant's administrator entered a motion for a new trial, the reasons assigned being:

1. The court admitted improper evidence in behalf of the defendants.

2.    The court gave improper instruction for the defendants.

3.    The verdict is wholly inadequate as to the amount of the damages.

4.    The verdict is against the evidence.

5.    The verdict is inconsistent.

The motion being overruled, appellant prayed for and obtained this appeal. The errors assigned are the same urged upon the Circuit Court as grounds for a new trial, but the briefs of counsel make no reference to the admission of alleged improper testimony, nor to any instructions alleged to have been erroneously given.

These points are therefore waived. There remains for our consideration only the complaints that the damages allowed are insufficient and the verdict inconsistent and against the evidence. These resolve themselves into one complaint, which is, that the damages are wholly insufficient; for appellant does not, of course, complain that the verdict is otherwise against the evidence or otherwise inconsistent with the evidence.

It seems that, at the common law, new trials were not allowed, upon the ground that the damages awarded by the jury in action for torts were insufficient; at least, such was the rule in trespass *vi et armis*, and there is much authority that the rule applied in all actions for torts. Bacon's Abridg., Ed. 1851, p. 605; 4 Minor Inst. 758.

Conceding that, as a general rule, a new trial will not be granted on the ground that the damages are too small in actions for wrongs and injuries, still we think an exception may be drawn from the more modern judicial holdings. The law is, we think, that where a verdict gives grossly inadequate damages to the plaintiff, a new trial may be granted the plaintiff upon the same principle that like relief is granted to a defendant when excessive damages are assessed by the jury. 1 Sutherland on Damages, 815–16; Amer. and Eng. Ency. of Law, page 893, note 1, and pages 590–1–2. This doctrine is recognized in Carr v. Miner, 42 Ill. 179, and James v. Morey, 44 Ill. 352.

Hackett v. Pratt.

Where there is no legal measure and the damages are unliquidated, the estimation of damages is peculiarly in the province of the jury; so also as to the assessment of vindictive or exemplary damages; but where actual damages are shown with such definiteness as to furnish a reasonably certain measure, we think the rule is that the court may look into the circumstances proven and grant a new trial, if the amount awarded by the verdict is manifestly inadequate.

The case of Comstock v. Brosseau, 65 Ill. 39, and cases in 4 Scam. 33, and p. 497, cited by counsel for appellee as supporting the contrary holding, only decide that a new trial will not be granted to enable a party to recover vindictive damages.

The deceased was a jeweler and earning and receiving wages at the rate of $18 per week. He provided a home for and supported and maintained his two daughters and contributed to the support of his nephew, a boy of the age of eleven years, and also was educating the nephew. These persons, it is clear, were injured pecuniarily, and suffered substantial financial loss by reason of the death of the deceased, and the evidence furnished a reasonably certain measure of damages therefor. So it might seem manifest that the nominal amount allowed by the verdict was wholly inadequate to compensate the beneficial plaintiffs for the wrong and injury which the jury otherwise indicated was inflicted upon them.

We are disposed to agree with the Appellate Court of the First District in the view of that court as expressed in Lovett v. City of Chicago, 35 Ill. App. 570, and O'Mally v. Railway Co., 33 Ill. App. 354, that " the refusal of a new trial will not be disturbed merely on the strength of the inconsistency of the verdict." But if a verdict be that the defendant is guilty of such neglect or default as results in the death of a human being, and yet allows but nominal damages to the beneficial plaintiff, who appears from the evidence to have suffered substantial pecuniary loss by reason of the death of the deceased, we are called upon, it seems to us, to subject the cause to an

investigation to ascertain if the verdict upon the whole case administers justice between the parties.

The default and neglect relied upon in the first and second counts of the declaration is that the appellees were druggists, engaged in the business of compounding and selling drugs, medicines, poisons, etc., and that they committed the sale of such articles to Henry C. Pratt, who, it alleges, was not a registered or an assistant registered pharmacist, and that Francis Baker, the appellant's intestate, who was suffering with an attack of la grippe, " went to their place of business and asked for a vial of whisky and rock candy, and that the defendant unlawfully, carelessly and negligently filled the vial with deadly poison called corrosive sublimate, instead of the mixture called for by the said Baker and paid for by him, and did not affix a label to the wrapper or cover of said vial having thereon the word " poison," or the words " corrosive sublimate," and that Baker, exercising due care, etc., drank of said poison and died from its effects.    There is in the record no proof tending to show that Pratt was not a registered or an assistant registered pharmacist, or tending to show that Pratt, or any one else, filled a vial or bottle in which he intended to put, or into which the deceased expected that he would put, whisky and rock candy, with corrosive sublimate or any other mixture for the deceased.    No right of recovery could be based upon either of these counts.

The third and only other count charges that the defendants, as partners, were engaged in the business of compounding and selling drugs, medicines, poisons, etc., at retail, in Jacksonville, and that the deceased went into their drug store and asked for and paid for a small vial of whisky and rock candy, and that one of the defendants filled a small vial with poison—corrosive sublimate—and placed around it a wrapper or cover; when the deceased asked for whisky and rock candy one of the defendants delivered to him the said vial of corrosive sublimate, carelessly and negligently, and well knowing that the deceased intended to drink the contents, and that said deceased with due care for his own safety removed the cork from the vial, and drank the

contents of the vial, and was poisoned and afterward died by reason thereof. It is upon this count alone that any verdict or judgments for the appellant could be supported. The direct averments of this count are that the deceased went into the drug store of the appellants and asked for whisky and rock candy, and that in reponse to his order a vial was filled carelessly and negligently with corrosive sublimate instead of whisky. There is no pretense, as we before said, that any testimony was introduced even tending to prove that the appellee, or any one, by mistake or negligence put corrosive sublimate in a bottle or vial that was intended to be filled with whisky and rock candy.

If inferences in favor of the pleader can be drawn from a pleading and some violence in that respect be indulged in, it might be inferred from this third count that it was intended by it to charge that one of the defendants put corrosive sublimate in a vial and put a wrapper or cover around it, and that another of the defendants handed the vial to the deceased when he asked for a vial of whisky and rock candy. Unless such violent presumption is indulged no evidence will be found in the record to justify any finding whatever under the declaration.

The evidence was, however, allowed to go to the jury without objection to exclude it, and the jury passed upon the case thus presented to them, upon instructions that are not complained of, and consequently our duty is to determine the question presented to us from a consideration of the facts and circumstances proven.

It appears from the evidence that the deceased was a jeweler, and was employed and worked in a jewelry establishment but two doors from appellees' drug store. He was suffering from an attack of la grippe, and was using a remedy—whisky and rock candy—which was procured from appellees. He had been using this remedy for some weeks and found it necessary to procure three or four bottles each week. His habit when he had exhausted his supply, was to bring his empty bottle as he came to his work in the morning, leave it at appellees' drug store to be filled, and call for

it as he was on his way home at the noon hour; or if he did
not bring an empty bottle with him he would step into the
drug store in the morning and order a bottle to be filled for
him, which he would call for at noon.   Appellees' custom
was to fill the bottle with whisky and rock candy, wrap it in
manila wrapping paper, and lay it on the shelf until the
deceased should call for it.   In the morning of the day of the
unfortunate occurrence out of which this cause arose, one of
the appellees, Mr. Kuechler, received from a young lady
customer a prescription for two drachms of corrosive subli-
mate in eight ounces of alcohol, which he filled by putting
the requisite amounts of the desired liquids in a bottle, upon
which was affixed a label bearing the word "poison" printed
thereon.   The young lady requested him to keep the bottle
until she should call for it on her way home, and he wrapped
it in manila wrapping paper, of the same color used when
wrapping bottles of whisky and rock candy for the deceased
and other parties generally, and laid it upon the shelf where
packages to be delivered to deceased and other customers
were frequently laid.   Mr. Kuechler testified he wrote the
name and address of the young lady, and the sum to be paid
by her on the package, and went to dinner, leaving Mr.
Pratt, another of appellees, who had no knowledge of the
corrosive sublimate prescription, in charge of the store.   It is
conceded that the deceased came for a bottle of whisky and
rock candy, and received the package of corrosive sublimate.
He hastily tore away part of the wrapper, removed the cork,
and drank of the contents of the bottle.   The appellant
contends that admissions and statements of the appellees
were proven, to the effect that the deceased had, as was his
custom, ordered in the morning a bottle of his remedy, to
be prepared and ready for him at noon, and that it was so
prepared and wrapped in manila paper, and laid upon the
shelf near the package of corrosive sublimate; that when
he called, two packages were on the shelf, and Mr. Pratt neg-
ligently and carelessly handed him the one containing the
corrosive sublimate.

   The testimony of the appellees and their employes upon
this point, is that the deceased had not been in the drug

store that day, prior to the time he called at noon, and that he had not ordered a bottle to be filled for him, or left his empty bottle for that purpose, but that he came into the drug store at noon and went toward the shelf where the package containing the corrosive sublimate lay, and pointing toward it, said to Mr. Pratt, " give me my bottle;" that Mr. Pratt did not know what was in the package, but from the words and actions of the deceased, supposed the deceased did know, and seeing but one package there, handed it to him. They deny that two packages were on the shelf. Soon after the deceased had drunk the poison, and while yet in the drug store, his overcoat was brought in from his place of employment, and in one of its pockets an empty bottle was found, upon seeing which the deceased said, " that is what made the trouble," or "caused the mischief," or something to that effect. Appellees argue with much force that the deceased intended to leave that empty bottle in the drug store, to be refilled, thought he had done so, and came into the drug store laboring under such a false impression, and seeing a package wrapped in same kind of paper and of about the size of the one he expected to get, lying upon the same shelf where packages intended for him had at other times been placed, the conclusion that it was for him arose in his mind, and that he asked for it and pointed to it as his, and that Mr. Pratt, relying upon the words and actions of the deceased, gave him the package without knowing what it contained, or having reasons to suspect it was not what the deceased thought it was.

The 103d section of the Criminal Code, which provides for the punishment of any druggist who shall " sell and deliver " corrosive sublimate, or other poisonous substances or liquids, without having the word "poison" printed upon a label attached to the vial in which the poison is contained, was complied with, though we do not think it has application to this case, nor do we think the right of the parties depended at all upon compliance, or non-compliance with the 14th section of the pharmacy act, for its proviso is that its provisions shall not apply to the dispensing of physicians'

prescriptions for poisons. The right of recovery, if any there be upon the facts proven, must rest upon the ground that Mr. Pratt's conduct in handing the package containing the poisonous liquid to the deceased was negligent, and that he, in the exercise of ordinary care as a dealer in deadly drugs, should have removed the wrapper before handing the package to the deceased. Recovery could not be had upon that theory, if the deceased, by a failure to exercise ordinary care, contributed to the mishap. A careful consideration of the evidence has impressed our minds with the conviction that the truth of the matter is, that the deceased on the morning in question intended to leave in the drug store, the empty bottle, afterward found in the pocket of his coat, to be filled with the remedy he was using, but that he did not do so; that he came into the drug store at the noon hour, hurriedly, laboring under and controlled by the impression that his bottle was there, ready for his use, and seeing the package containing the corrosive sublimate, supposed it was for him. His words and actions induced the like belief in the mind of Mr. Pratt, who, at his request, delivered the package to him, as a reasonable and prudent man under all the circumstances would most probably have done. If either of these parties was responsible more than the other for the unfortunate result, it was not the appellees. A finding for the appellees would, in our opinion, have been more in harmony with the weight of the evidence. The verdict is not therefore unjust as to the appellant, and can not be reversed upon the ground alone that it is not consistent. The appellees are content to abide the judgment and end the litigation, and they alone, in our view, have cause of complaint. The judgment is therefore affirmed.