## William Hamilton, by His Next Friend, v. Pitsburgh, Cincinnati, Chicago & St. L. Ry. Co.

1. NEW TRIALS—*Allowed for Insufficient Damages in Actions for Torts.*—At the common law, new trials were not allowed on the sole ground of insufficient damages in actions for torts.  As a general rule it will not be done to-day, although it is conceded that where actual damages are shown with such definiteness as to furnish a reasonably certain measure, the court may grant a new trial upon the ground of a manifestly inadequate amount.

2. EVIDENCE—*Tending to Mitigate Damages.*—It is competent in a personal injury suit to introduce in mitigation of damages, evidence tending to show that the injury need not prevent the plaintiff from pursuing many ordinary occupations. and doing fairly well with an artificial limb, most of the ordinary things that are done by men with two sound legs.

**Trespass on the Case,** for personal injuries.  Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed.  Opinion filed November 28, 1902.

**Statement.**—This is an action for personal injuries received by appellant August 2, 1899, he being then nineteen years of age.  He had left his place of employment at the noon hour intending to go to his home about four blocks away for lunch.  He walked north on May street toward the point where appellee's railroad tracks cross that street at right angles, near Carroll avenue.  There was a high board fence enclosing the lot on the southwest corner of the intersection of May street with the railroad right of way.  This fence ran west of the sidewalk on the west side of May street, and shut off the view along the tracks toward the west of one approaching the railroad, as was appellant, from the south, until the corner of the street was reached, about fifteen feet from the tracks.  At the time, a train consisting of an engine and six cars had backed out of a coal yard some distance west of May street, and had come to a full stop some eight or ten feet west of the crossing.  Then in order to let an engine switch in ahead of his train on the same track, the con-

ductor told his engineer to "slack up easily" and "to slack back a little" for that purpose. This was done, and the train backed enough so that the rear car reached the west edge of the west sidewalk on May street just as appellant, with a companion, was crossing the track at that point. The car was moving very slowly, but it struck appellant on his left side, it is stated, and he was knocked or fell down, so that the car wheel caught his left leg. The train was moving so slowly that it was stopped within about three feet of where appellant was first struck, the wheel resting partly on his leg, and so holding him until the engineer could respond to the conductor's signal and start the train ahead.

Appellant was carried to a hospital, and after ineffectual efforts to save the limb without taking it off, it was amputated "just above the knee" the 6th of September following. He remained at the hospital two weeks longer, and was out of work about a year.

At the time of the accident the gates at the railroad crossing were not lowered, the gateman was not at the moment in his tower, and there is testimony tending to show that the engine bell was not heard by appellant or his companion who was walking with him at the time of the accident. The flagman was near his "shanty," but apparently gave no signals. It is said by appellee's counsel that the gates were not down at the time because, so far as the gateman or flagman knew, no train was about to cross or encroach upon the crossing.

A verdict was returned and a judgment rendered in favor of appellant. He prosecutes this appeal, however, claiming that the amount of the verdict and judgment is inadequate.

AMBROSE A. WORSLEY, attorney for appellant.

GEORGE WILLARD, attorney for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The question presented for our consideration is whether the damages awarded appellant are so inadequate that the

Hamilton v. P., C., C. & St. L. Ry. Co.

judgment for $3,000 should be set aside and a new trial granted.

It is urged, first, that the trial court erred in admitting incompetent, irrelevant and improper testimony. The testimony objected to was that of two witnesses introduced by appellee, who wore artificial legs. One of them testified that his left leg had been amputated two inches below the knee when he was ten years of age. He was twenty-eight years old when he testified. His present occupation is that of watchman at a railroad crossing. He had been a fireman two years, but quit that work of his own accord because of hours and remuneration. He stated that he has never used a cane but gets around " with about the same facility as a man with two legs, only it curtails a little of my pleasure, such as scuffling or anything like that. I can dance or ride a bicycle or get on or off moving cars;" but he would " not say an artificial limb is as good as a natural one." The other witness referred to, had lost the lower part of his right leg. It had been amputated two inches and a half above the ankle, and he had worn an artificial limb four years. He was employed as a crossing watchman, and stated that his duties required him to keep on his feet two-thirds of the time ; that he worked eleven hours a day, and sometimes fifteen hours of a night; that he can do most any kind of work and could work at his " trade very nicely," which is that of a blacksmith.

It is objected that these witnesses had not received exactly the same kind of injuries as appellant, and hence it is argued their testimony was incompetent. We are not, however, advised of any substantial reason why it was not competent for appellee to introduce in mitigation of damages, evidence tending to show that the injury need not prevent appellant from pursuing many ordinary occupations and doing fairly well with an artificial limb most of the ordinary things that are done by men with two sound legs. It may be that with an amputation above the knee joint an artificial leg would not enable a man to do with

equal facility, the same things that he could do with an amputation below the knee. That was for the consideration of the jury. But art and invention have done much to mitigate the inconveniences occasioned by the loss of limbs, and to restore the power of locomotion and the earning capacity which otherwise might be greatly lessened or lost, and evidence tending to show facts of that nature was competent for the consideration of the jury. Appellant's attorney contends that the witnesses should have been compelled to "actually perform the acts and things which they stated they could do," but not allowed "to state that they could perform certain acts as well as persons who possessed natural limbs." The witnesses were stating facts, not mere opinions, and the objection would apply with equal force to any statement of what a witness had actually done or seen done as a matter of fact. They were not called upon by counsel to demonstrate by experiment the correctness of their statements, and the question of what experiments are admissible and what are not, which is argued by appellant's attorney, is not before us.

It is urged that the amount of the verdict is not commensurate with the appellant's loss and injury. That was the question presented to the jury, and the complaint is not often made to a reviewing court that the amount of such a finding is inadequate. At the common law new trials were not allowed on the sole ground of insufficient damages in actions for torts. As a general rule it will not be done to-day, although it is conceded that "where actual damages are shown with such definiteness as to furnish a reasonably certain measure," the court may grant a new trial upon the ground of a manifestly inadequate amount. Hackett v. Pratt, 52 Ill. App. 346. New trials are not infrequently awarded where the damages are deemed so excessive as to indicate the existence of passion and prejudice in the jury, tainting sometimes not only the amount, but the finding as to questions of fact on which the award is based. If in the case at bar the damages were merely nominal or there was any indication in the record that the jury had been

improperly instructed or influenced, a new trial might be awarded.    But $3,000 is not a mere nominal amount.    It is a substantial sum of money.    The cases cited by appellant's counsel, where verdicts for two or three hundred dollars were set aside as inadequate, are not satisfactory precedents for a case like the present.    The earning power of the appellant does not appear to be greatly diminished, and there is no fixed standard to determine what is a proper measure of pecuniary damages for such an injury.    Appellant's counsel does not pretend to furnish such a standard nor point out to us any ground for his assumption that the jury did an injustice to appellant other than his opinion that he ought to have had a larger sum.

Appellee's attorney claims that there should have been no award at all; that appellant crossing the track at high noon of a summer's day ought, in the exercise of ordinary care to have heard and seen the approach of a car moving so slowly as was the car which struck him, and have gotten out of the way. .It may seem strange that the accident should have happened at all under the circumstances, but the jury settled that question as they did the amount of the damages, and no sufficient reason appears, which could justify our interference.    The judgment of the Circuit Court must be affirmed.