Sophie Schacht, Appellant, v. Robert Elliott, Appellee.

Gen. No. 43,970.

Opinion filed November 19, 1947. Released for publication December 24, 1947.

John M. Beverly, J. Theodore Kiggins and A. J. W. Appell, all of Chicago, for appellant; A. J. W. Appell, of Chicago, of counsel.

Joseph P. Brodie, of Chicago, for appellee; William E. Corrigan, of Chicago, of counsel.

Mr. Justice Burke delivered the opinion of the court.

Sophie Schacht filed a two count complaint in the superior court of Cook county against Robert Elliott to recover damages for personal injuries sustained as a result of being struck by an automobile owned and driven by him on September 30, 1944. The first count charged that while she was in the exercise of due care and caution for her own safety, the defendant so carelessly and negligently drove and operated his automobile as to cause the injuries she suffered. The second count charged that the injuries were proximately caused by the wilful and wanton misconduct of the defendant. The case was tried before the court and a jury. At the close of all the evidence the court denied defendant's motion to instruct the jury to find him not guilty on the first count, but allowed a similar motion as to the second count. The jury returned a verdict finding defendant guilty and assessing plaintiff's damages at the sum of $500. A motion by plaintiff for a new trial was overruled and judgment was entered on the verdict. Plaintiff appeals.

Asking a reversal of the judgment and a new trial, she states that the jury returned a grossly inadequate verdict, ignored the instructions and failed to give due consideration to the undisputed evidence as to the damages. Defendant asserts that plaintiff's injuries were proximately caused by her negligence, that he exercised due care, that she had a fair trial, and that as she is not entitled to receive anything, she has no legal basis to complain of receiving $500. If the damages are adequate, we should affirm the judgment. We, therefore, turn to a consideration of the evidence on the subject of damages. She suffered a fracture of the fibula of her left leg and lacerations and contusions. She was taken to a hospital where

a cast was placed on her leg. She remained there 10 days. She was then taken home. She moved around in a wheelchair or on crutches. She testified that she suffered from dizzy spells and that after being home two weeks, she became dizzy and fell on her left arm while getting out of the wheelchair with the aid of crutches. She was then returned to the hospital, where she remained for three weeks. An x-ray picture taken at the hospital showed that in the fall at home she suffered a "Colles' fracture" of the large bone of her left forearm. A cast was placed on her forearm. The cast was removed from her leg on November 20, 1944. The cast on her arm was removed after three weeks and replaced with another, which remained for four weeks. After this the arm was bandaged and put into a sling, which she wore for more than a month. There was evidence that as a result of her injuries she became sick, suffered pain and was helpless until a few days before January 1, 1945, during which time she was in the hospital or confined to her home. She testified that she was then suffering from the injuries and that she could not "make a fist," or lift anything with her left hand. She incurred hospital bills of $234.40 and bills for physicians' services of $300. Her weekly wages when injured averaged $32. Up to the time of the trial she had not returned to work. She testified that prior to the occurrence she was in good health and that she had worked for the same employer for 21 years. From this outline it is apparent that if she is entitled to recover any damages, the amount awarded is inadequate.

Supporting defendant's contention that as plaintiff is not entitled to recover at all the judgment in her favor should not be set aside as inadequate, defendant cites *O'Malley v. Chicago City Ry. Co.*, 33 Ill. App. 354, where the court said (355):

"It may be conceded that the action of the jury was inconsistent, but the concession would furnish no consistent reason for inconsistency in the action of the

court. . . . A plaintiff, not entitled to recover at all, has no right for any reason to have a verdict for the defendant set aside. . . . nor one in his or her own favor, because the damages awarded are less than the pecuniary injury.''

This rule was approved in *Isley v. McClandish,* 299 Ill. App. 564; *Weiner v. Kjelstad,* 314 Ill. App. 671 (Abst.) and *Lovett v. City of Chicago,* 35 Ill. App. 570. In *Hackett v. Pratt,* 52 Ill. App. 346, the court said that it was ''disposed to agree'' with the view expressed in the *Lovett* and *O'Malley* cases, but that ''we are called upon, it seems to us, to subject the cause to an investigation to ascertain if the verdict upon the whole case administers justice between the parties.'' In *Kilmer v. Parrish,* 144 Ill. App. 270, we said (274):

''At common law new trials were not allowed upon the ground that the damages allowed by the jury in actions for torts were insufficient. But the modern rule is that a new trial may be granted where the verdict is grossly inadequate, for the same reasons as those governing where the verdict is excessive.''

See also *Montgomery v. Simon,* 309 Ill. App. 516; *Luner v. Gelles,* 314 Ill. App. 659; *Ritholz v. Yellow Cab Co.,* 319 Ill. App. 115 (Abst.); *Jensen v. City of Chicago,* 306 Ill. App. 265 (Abst.); *Novitsky v. Boland,* 322 Ill. App. 698 (Abst.).

Plaintiff, a married woman about 52 years of age, had worked for the Cuneo Press for 21 years. On Saturday, September 30, 1944, at about 4:00 p. m. she left her place of employment on Cermak Road (22nd street), Chicago, intending to go to her home. Cermak Road is a public highway running in an easternly and westernly direction. The plant where she worked is located on the south side of Cermak Road. The west wall of the plant is close to the east bank of the South Branch of the Chicago River. She intended to cross to the north side of the street in order to board a west-

bound Cermak Road trolley car. One was stopped there at the time taking on passengers. The place where she crossed was not designated by street markings as a pedestrian crossing. While not a crosswalk a large number of pedestrians habitually crossed there and a policeman was usually assigned to traffic duty there. At the time of the occurrence no policeman was present. Grove and Canal streets run in a northernly and southernly direction, and intersect Cermak Road, a short distance east of the place where she crossed. The distance from the west end of the bridge to the entrance to the Cuneo plant is about 15 feet. It was a bright day. Defendant, a policeman, accompanied by his wife, was driving his car east on Cermak Road. They were on their way to shop. There was testimony that the bridge was 200 or 225 feet long. Plaintiff testified that she could see to the middle of the bridge. Photographs in evidence show that the roadway east of the bridge is wider than the bridge roadway.

Plaintiff testified that she looked east and west for oncoming traffic, but saw no automobile approaching. She did not see the defendant's automobile at any time before the mishap. She said that she had an unobstructed view to the west and could see half way across the bridge. When she left the plant a "lot of people" were coming out with her, some alongside, some in front and some in back of her; that the westbound street car stopped directly opposite the plant entrance; that she was not in a hurry; that she was walking fast, but not running; that there was an automobile parked east of the entrance to the plant; that no automobiles were parked west of the entrance to the plant; and that she crossed "in front" of the automobile parked east of the entrance. After starting to cross the street her next remembrance was that she was in an ambulance. The first time she realized she had been hit by a car was when "she came to" Sunday night at the hospital. James Marotta, a

witness for plaintiff, testified that he worked for the Cuneo Press for 35 years; that he did not know plaintiff personally but had seen her around the plant; that people were coming out of the plant going to street cars and walking east and west; that as he came out of the plant he was "right behind" plaintiff; that he was standing at the curb when she started to cross the street; that when he was about five feet south of the eastbound car tracks, he heard a "squeak" on the bridge; that he looked around to see "where that squeaking was coming from"; that as he "looked back again to see what happened," the automobile hit her and threw her about 15 feet in the air; that it hit her with the front bumper; that "he skidded" about 20 feet from "when he started to hit her"; that he saw the automobile when "he started to apply his brakes on top of the bridge"; that after the impact she was lying on the pavement; that her "purse was all over, her shoes were knocked off and her hat was off"; that he (witness) drove a car and that in his opinion defendant's car was traveling at a speed of "30 miles or better" when he saw it "come over the bridge"; and that at the time of the impact he "would say" that defendant's car was going "almost 30 miles an hour."

Alice Stewart, a Cuneo employee, testified that defendant's car was traveling 10 to 15 miles an hour; that she saw plaintiff come out of the door of the plant and run across the street; and that plaintiff did not look either way. Elbora Ballard, a former Cuneo employee who was in the vicinity, testified that the automobile was going "very slow." Defendant's wife testified that the car was moving at a speed of between 12 to 15 miles an hour; that there was a car parked where plaintiff ran out; that plaintiff was looking in the "opposite direction"; and that she ran into the right front fender of her husband's automobile. Defendant testified that his car was going about 15 miles

an hour; that he was driving in an easternly direction south of the south rail; that as he got to the east end of the bridge he saw two parked cars in front of the Cuneo plant, one a little west of the entrance with the hood almost in front of the entrance, and the other beyond the entrance with a small space between; that the only pedestrian he noticed was plaintiff; that he first saw her when she ran in front of the car with her head turned toward the east and her hand up in the air; that he was between five and seven feet from her; that he applied the brakes and pulled the car to the left; that there was a standing westbound street-car; that plaintiff came in contact with "the very corner" of the right front fender of his car; that she was knocked down and rolled over three or four times, a distance of four or five feet; that after striking her his car did not go over two or three feet; that his car was "practically stopped" when it struck her; that when her body lay still on the pavement and his car was stopped, she was in front of the car and a little to the right; that he and his wife got out and looked at plaintiff; that she was unconscious; and that at defendant's request a man in a car parked near the entrance to the plant consented to convey her to the hospital. There was testimony as to skid marks on the pavement in back of defendant's car. A police officer said he measured the marks and that they started from the bridge and extended 50 to 55 feet. When tested by police officers after the occurrence, the brakes of the automobile were found to be in good mechanical condition. The officers observed a dent on the right front headlight lens "to the right of the headlight." The glass of the headlight was not broken.

The jurors were instructed that if they found from the evidence that plaintiff was not entitled to recover, they would not have occasion to consider the question of damages. They were also instructed as to the measure of damages. We, of course, do not know

by what process of reasoning the jurors arrived at the verdict. Manifestly, they did not follow the instructions. There was a sharp conflict in the testimony on the care exercised by plaintiff and defendant. If the jury gave credence to the testimony favorable to plaintiff, the verdict should have awarded adequate damages. We do not feel that we should extend the rule in the *O'Malley* case to the factual situation presented by the case at bar. The verdict is inconsistent. We cannot say that it should stand on the ground that plaintiff should not complain because she is not entitled to receive anything.

From a careful analysis of the transcript of the testimony we conclude that the cause of justice will be best served by requiring a new trial. Plaintiff suggests that we reverse that part of the judgment relating to damages and order a new trial as to that issue. In some cases we have followed that procedure. However, we are of the opinion that the case should be retried as to all issues. The judgment of the superior court of Cook county is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded for a new trial.*

LEWE, P. J., and KILEY, J. concur.